UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ZANETA ("JOI") RAINEY LIGHTFOOT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HENRY COUNTY SCHOOL DISTRICT,<br><br>　　　　Defendant. | CIVIL ACTION NO.<br><br>1:12-CV-0694-CAP |

**O R D E R**

This action is before the court on the defendant's motion for reconsideration [Doc. No. 72], the plaintiff's motion to amend her complaint and reopen discovery [Doc. No. 73], and the plaintiff's motion for reconsideration [Doc. No. 76].

**I. Factual and Procedural Background**

The plaintiff was hired as a teacher by Henry County School District ("HCSD") in August 2007 and assigned to Woodland High School beginning in 2008. In March 2010, the plaintiff requested an accommodation under the Family & Medical Leave Act in the form of intermittent leave due to her own health condition. After a series of events that included disciplinary action and the removal of the plaintiff as cheerleading coach, the plaintiff filed this

lawsuit alleging that HCSD discriminated against her in violation of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), (Counts I-III), retaliated against her in violation of the ADAAA (Count IV), and retaliated against her in violation of the Family & Medical Leave Act ("FMLA") (Count V).  On July 8, 2013, this court granted summary judgment in favor of the defendant as to Counts I, II, III, IV and portions of Count V of the plaintiff's amended complaint [Doc. No. 71].  The order denied summary judgment on the plaintiff's claim that she was retaliated against for exercising her rights pursuant to the FMLA.

The defendant has filed a motion for reconsideration of the denial of summary judgment as to a portion of Count V arguing that it is entitled to Eleventh Amendment immunity as to this remaining claim.  The defendant also asks the court to revisit its denial of Rule 11 sanctions and allowance of plaintiff's amendment to add her ultimate termination as an adverse employment action.

The plaintiff has filed a motion for reconsideration with respect to the grant of the defendant's motion for summary judgment on her ADA retaliation claim.  The plaintiff contends that the court did not address her protected conduct of requesting intermittent leave.

## II. The Defendant's Motion for Reconsideration

### A. Denial of Summary Judgment As to Count V

As an initial matter, the court notes that the defendant did not raise Eleventh Amendment immunity in its motion for summary judgment. However, the Eleventh Circuit has held, "The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this [c]ourt will consider the issue arising under this Amendment . . . even though urged for the first time in this [c]ourt." *Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 800 (11th Cir. 1988) (quoting *Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459, 467 (1945)). Accordingly, the court will address the applicability of Eleventh Amendment immunity as to the FMLA retaliation claim for money damages.

The Eleventh Amendment prohibits suit brought by an individual in federal court against a state and its agencies unless the state either consents to suit or waives its immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Eleventh Amendment immunity extends to other entities properly described as "arms of the state." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Fouche v. Jekyll Island State Park Auth.*, 713 F.2d 1518 (11th Cir. 1983). Therefore, if the Henry County School

3

District is an "arm of the state" it is entitled to Eleventh Amendment immunity as to the FMLA retaliation claim for money damages. *See Coleman v. Court of Appeals*, 132 S. Ct. 1327 (2012) (holding that Congress exceeded its authority in attempting to waive the States' sovereign immunity as it pertains to the "self care" portion of the FMLA, such that a state may assert sovereign immunity as a defense to such a claim.)

"Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). To determine whether a particular defendant acts as an arm of the state while engaged in the relevant function, courts in the Eleventh Circuit consider the following four factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity. *Manders*, 338 F.3d at 1309; *Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005).

The court notes that there are three decisions from another district court in this state holding that Georgia school districts are arms of the state for purposes of Eleventh Amendment immunity. *D.C.H. ex rel. Hayes v.*

*Jones*, 2:12-CV-066, 2013 WL 870317, *6 (S.D. Ga. Mar. 7, 2013); *C.T. v. Liberty County School System*, No. 4:12-cv-149, 2013 U.S. Dist. Lexis 25492 (S.D. Ga. Feb. 25, 2013); *Flanagan v. Bd. of Educ.*, No. 4:98-cv-278 2001 U.S. Dist. Lexis 26706 (S.D. Ga. Mar. 19, 2001).  However, those courts did not undertake the four-part test set forth above in order to reach their decisions. Rather, they simply looked to the first prong of the test: how Georgia law treats school districts.  While this court does not disagree with the holdings, it will employ the entire four-part test to reach a determination in this case.

### *1. How State Law Defines School Districts*

The Georgia Constitution places the obligation for the provision of adequate public education on the state.  Ga. Const. art. VIII, §. 1, ¶ 1. In fulfilling this obligation, the General Assembly established districts defined on the same geographical bases as counties.  O.C.G.A. § 20-2-50. Additionally, Georgia courts consistently recognize school districts as political subdivisions of the state. *See Wellborn v. DeKalb County School Dist.*, 489 S.E.2d 345, 347 (Ga. Ct. App. 1997); *Crisp County School System v. Brown*, 487 S.E.2d 512, 514 (Ga. Ct. App. 1997); *Coffee County School Dist. v. Snipes*, 454 S.E.2d 149 (Ga. Ct. App. 1995).

The plaintiff cited *Thornton v. Clarke Cty. Sch. Dist.,* 514 S.E.2d 11, 12–13 (Ga. 1999) for the proposition that under certain Georgia statutes,

5

school districts are not state agencies. However, that case addressed whether a school district is a "government entity" for purposes of the Georgia Environmental Protection Act. It was not concerned with the distinction between a local and a state entity. In fact, the Georgia Supreme Court recognized that it is undisputed that school districts are political subdivisions of the state. *Id.* at 12 n.1.

The only aspect of Georgia law that favors a finding that a school district is a local entity as opposed to a state entity is the geographical designations based on counties. Otherwise, Georgia law defines school districts as state entities. The court finds that the geographic organization of school districts is not enough to outweigh the extensive law to the contrary. Therefore, this factor favors a finding that the defendant is an "arm of the state."

*2. What Degree of Control the State Retains over School Districts*

The plaintiff argues that county boards of education have significant control over the management of county school districts. The defendant, on the other hand contends that the state exercises almost complete control over school districts.

The Georgia Constitution provides, "Each school system shall be under the management and control of a board of education." Ga. Const. art. VIII,

§ 5, ¶ II.  However, it also provides:

> Authority is granted to county and area boards of education to establish and maintain public schools within their limits; provided, however, that the authority provided for in this paragraph shall not diminish any authority of the General Assembly otherwise granted under this article, including the authority to establish special schools as provided for in Article VIII, Section V, Paragraph VII.

Ga. Const. art. VIII, § 5, ¶ I.

Additionally, the state dictates the preferred criteria for individuals seeking election to a local board, O.C.G.A. § 20-2-49, and defines the rules of eligibility of potential board members, O.C.G.A. 20-2-50. The state sets the term of office for local board members, O.C.G.A. § 20-2-52, and designates the method for filling vacancies, O.C.G.A. § 20-2-54.1.  Likewise, the state dictates the procedures used in meetings, defines quorum, dictates the responsibility of the board officers and dictates the number of annual meetings the board must convene.  O.C.G.A. §§ 20-2-57–58.  There are a number of additional statutes that establish the state's control over local boards in areas of curriculum development, employment and compensation of teachers, student discipline, and student health.  While the plaintiff points out duties of the local boards such as making personnel decisions, she ignores the dictates of the state in these decisions.  For example, a county board may

terminate a teacher only for precise reasons mandated by the state. O.C.G.A. § 20-2-940.

In light of the extensive regulations the state has imposed upon local school districts, the court finds that these entities have very little autonomy. Therefore, this factor favors a finding that Georgia school districts are arms of the state.

### *3. Source of School Districts' Funds*

School districts derive their funds from the state and through their taxation powers over their local geographic base. *See* O.C.G.A. §§ 20-2-160–20-2-171. According to the declaration of HCSD's Assistant Superindentent of Finance, Jeff Allie, [Doc. No. 77-1], for the current fiscal year, the defendant received 65% of its operating budget from the state and 34% from local taxation. It is true that local school districts have the ability to borrow money and raise funds, and the borrowed funds could exceed the amount of the state appropriate. O.C.G.A. § 20-2-390. However, according to the declaration of Allie, no portion of the defendant's operating budget is borrowed funds.

Because the amount of state funding greatly exceeds local funding, this factor favors a finding that the defendant is an arm of the state.

### *4. Financial Responsibility for Judgments Rendered against School Districts*

There is no obligation for the state to pay any judgment against HCSC. Therefore, it would be paid by the HCSD. The defendant argues that because the state funds a significant portion of HCSD's operating budget, state funds are implicated, and therefore, Eleventh Amendment immunity is warranted.

The plaintiff cites to a 1975 case from this district in which the court determined that a school district had sufficient sources of income to satisfy a judgment or the ability to raise it and therefore Eleventh Amendment immunity was not appropriate. *Davis v. Griffin-Spalding Cnty., Ga., Bd. of Ed.*, 445 F. Supp. 1048, 1054 (N.D. Ga. 1975). However, in the more recent *Manders* decision of the Eleventh Circuit, the court recognized that a potential to reduce a budget that was composed even partially state funds was a reason to afford Eleventh Amendment immunity. *Manders*, 338 F.3d at 1327.

Because HCSD's budget is made up, in large part, of state funds, the payment of any judgment in this case would result in a drain on state funds. Therefore, this factor favors a finding that the HCSD is an arm of the state.

All four factors of the *Manders* test weigh in favor of finding the defendant is an arm of the state. Therefore, as to the FMLA retaliation claim

for money damages, the plaintiff's suit is barred by the Eleventh Amendment.

As the plaintiff correctly points out in response to the motion for reconsideration, the defendant is not entitled to Eleventh Amendment immunity from injunctive relief [Doc. No. 74 at 13]. *See Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). However, the only injunctive relief sought in the amended complaint is:

> Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under the FMLA and the ADAAA or because of her participation in this lawsuit.

[Doc. No. 7 at 22].[1] In the Eleventh Circuit, a complaint seeking to require the opposing party do nothing more specific than "obey the law" is impermissible. *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *see also Burton v. City of Bell Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) ("As this injunction would do no more than instruct the City to 'obey the law,' we believe that it would not satisfy the specificity requirements of Federal Rule of Civil Procedure 65(d) and that it would be incapable of enforcement.").

---

[1] In the response to the defendant's motion for reconsideration, the plaintiff contends that she sought reinstatement of her cheerleading coach duties. However, this prayer for relief is not contained in the amended complaint.

10

Because the plaintiff is seeking injunctive relief in the form of an instruction to the defendant to follow the law, the prayer for relief fails to state a claim. Therefore, the defendant is entitled to judgment as a matter of law as to the claim for injunctive relief asserted in the amended complaint.

The motion for reconsideration of the denial of summary judgment as to the entirety of Count V is GRANTED.

### B. Sanctions

The defendant requests that the court revisit its denial of Rule 11 sanctions against the plaintiff in light of the Eleventh Amendment immunity bar. Given the fact that the defendant did not raise the Eleventh Amendment immunity issue until quite late in the proceedings,[2] the court finds no basis to revisit the sanctions issue. Moreover, without the immunity bar, the plaintiff would be proceeding on her FMLA retaliation claim, and may now pursue it in state court. Therefore, this is not a case in which the plaintiff had no evidence to support her allegations. The motion for reconsideration as to the sanctions issue is DENIED.

---

[2] Notably, the *Coleman* case relied upon the by defendant was issued on March 12, 2012. The defendant's motion for summary judgment was filed on April 22, 2013.

## III. The Plaintiff's Motion for Reconsideration [Doc. No. 76]

The plaintiff has filed a motion for reconsideration with respect to the grant of the defendant's motion for summary judgment on her ADAAA retaliation claim (Count IV). The plaintiff contends that the court did not address her protected conduct of requesting intermittent leave. In Count IV of the plaintiff's amended complaint, she alleged that she "engaged in protected activity under the ADAAA when she told Defendant that she believed she was being disciplined more harshly than her non-disabled coworkers because of her disability" [Doc. No. 7 at ¶ 78]. She does not mention any additional protected conduct that resulted in retaliation. She may not amend her complaint to add factual support for a claim through a motion for reconsideration. The court recognizes that in her motion for reconsideration, the plaintiff points out that "[i]n her Response [to the defendant's motion for summary judgment], Plaintiff argued expressly that her requests for intermittent leave, as an accommodation for her disability, constituted protected conduct under the ADA." [Doc. No. 76 at 3]. However, she cites to nothing in her amended complaint to demonstrate that she pled this conduct as a basis for her ADA retaliation claim. Arguments in a brief in response to a motion for summary judgment are not allegations and cannot be utilized to amend the complaint to add allegations. Because the court

adjudicated the motion for summary judgment as to the ADAAA retaliation claim in light of the factual allegations made in the operative complaint, there is no basis for reconsideration. The plaintiff's motion for reconsideration [Doc. No. 76] is DENIED.

**IV. Motion to Amend [Doc. No. 73]**

The plaintiff is seeking leave to file her second amended complaint in order to include retaliatory termination claims under the ADAAA and the FMLA as well as supporting factual allegations. The plaintiff was notified on March 8, 2013, that her teaching contract with the defendant would not be renewed. Within 12 days, the plaintiff filed an emergency motion for leave to amend her complaint [Doc. No. 46]. The court denied the motion with leave to refile because the plaintiff did not include a proposed amended complaint. She has now refiled the motion and included the proposed second amended complaint [Doc. No. 73].

In circumstances where a motion for leave to amend is filed after the deadline for amendments set forth in a scheduling order, the moving party must demonstrate that there is "good cause" for the amendment or the court cannot modify the schedule. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Fed. R. Civ. P. 16(b)). If a party was not diligent as to the matter that is the subject of the motion to amend, the good cause inquiry

should end. *Id.* However, if a party demonstrates good cause under Rule 16(b), the court may freely allow the party to amend its [complaint] if "justice so requires." Fed. R. Civ. P. 15(a); *Sosa*, 133 F.3d at 1419 (noting that it is only after a party demonstrates good cause under Rule 16(b) that the court will consider whether an amendment is proper under Rule 15(a)).

With respect to the claims based upon the plaintiff's termination, there is good cause to allow an extension of time to file an amendment pursuant to Rule 16. The 30-day time period for amending the court's scheduling order expired on September 25, 2012. However, the plaintiff did not learn of her termination until March 8, 2013. Upon learning of her termination, the plaintiff promptly sought leave to file an amended complaint. Therefore, she acted diligently, and there is good cause for modification of the court's scheduling order as to allegations related to the plaintiff's termination.[3]

---

[3] The court notes that in addition to the allegations regarding her termination, the plaintiff seeks to add an additional allegation within the ADAAA retaliation count. She now alleges that was she retaliated against through discipline and by being placed on a Professional Development Plan ("PDP") in response to requesting a reasonable accommodation for her disability [Doc. No. 73-2 at ¶¶ 25, 93]. In the amended complaint, the plaintiff alleged that she was retaliated against in violation of the ADAAA when she told the defendant she believed she was being disciplined more harshly than her non-disabled co-workers because of her disability [Doc. No. 7 at ¶ 78]. The court granted summary judgment in favor of the defendant on the ADAAA retaliation claim based upon discipline and the PDP because there was no evidence that the defendant knew the plaintiff complained that

Specifically, the plaintiff has shown good cause to make the following amendments:

(1) an allegation that the defendant retaliated against the plaintiff by terminating her for filing and pursuing this lawsuit in violation of the ADAAA [Doc. No. 73-2 at ¶ 96];

(2) an allegation that the filing of this lawsuit is a protected activity [Doc. No. 73-2 at ¶¶ 95, 104]; and

(3) an allegation that the defendant retaliated against the plaintiff for filing and pursing this action by terminating her employment [Doc. No. 73-2 at ¶ 105].

Because the plaintiff has demonstrated good cause pursuant to Rule 16 for a portion of the amendments she seeks leave to make, the court will next consider those amendments under Rule 15(a). Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time period for amending a pleading as of right has expired a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. The court has

---

she was disciplined more harshly than her non-disabled co-workers.  The plaintiff may not update her retaliation claim with allegations that could have been made in the amended complaint.  Therefore, there is an absence of good cause to allow the amendment as to what protected activity is to alleged to have resulted in the discipline and being placed on a PDP.

"broad discretion in permitting or refusing leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

A claim is futile if it cannot withstand a motion to dismiss. *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter of law"). As set forth above, the defendant is an arm of the state. Therefore, it is entitled to Eleventh Amendment immunity as to the FMLA retaliation claim. Likewise, the United States Supreme Court has specifically held that the Eleventh Amendment bars private individuals from filing suit against states under Title I of the ADA for money damages. *University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). Accordingly, the defendant would be entitled to Eleventh Amendment immunity as to the retaliation claim for money damages brought under the ADAAA.

Eleventh Amendment immunity from suit does not extend, however, to claims for prospective injunctive relief brought against an arm of the state. *Wu*, 863 F.2d at 1550 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Therefore, the court will consider the injunctive relief sought by the plaintiff in the proposed second amended complaint. She requests the court to:

> Grant Plaintiff a permanent injunction enjoining Defendant, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under the FMLA and the ADAAA or because of her participation in this lawsuit.

[Doc. No. 73-2 at 26].[4] As set forth above, a prayer for relief seeking to require the opposing party do nothing more specific than "obey the law" is impermissible. *Elend*, 471 F.3d at 1209; *see also Burton,* 178 F.3d at 1201. Because the plaintiff is seeking injunctive relief in the form of an instruction to the defendant to follow the law, the prayer for relief fails to state a claim. Therefore, even though Eleventh Amendment immunity does not apply to a claim for injunctive relief, the plaintiff's proposed second amended complaint fails to state a claim for relief, rendering amendment futile.

---

[4] In response to the motion for reconsideration, the plaintiff contends that she seeks reinstatment to her teaching position with the defendant [Doc. No. 74 at 13]. However, this prayer for relief is not contained in the proposed second amended complaint.

Because the defendants would be entitled to immunity as to money damages for the new claims sought to be raised in the proposed second amended complaint and because the claim for injunctive relief fails state a claim for relief, amendment is futile.  Therefore, the motion for leave to file an amended complaint and reopen discovery [Doc. No. 73] is DENIED.

## V. Conclusion

Based on the foregoing,

(1) the defendant's motion for reconsideration [Doc. No. 72] is GRANTED in part and DENIED in part;

(2) the plaintiff's motion for reconsideration [Doc. No. 76] is DENIED;

(3) the plaintiff's motion for leave to file an amended complaint and reopen discovery [Doc. No. 73] is DENIED

(4) the defendant is entitled to summary judgment as to all claims raised in the amended complaint;

(5) this order resolves all remaining issues in this lawsuit; the clerk is DIRECTED to close this civil action.

**SO ORDERED** this 17th day of September, 2013.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge